Right, we're going to get started. And our very first case for the day is appeal number 22-1199. And it's Yancheng Shanda Yuanfeng, Equity Investment Partners v. Kevin Wan. And it's Mr. Sokolov. Good morning. Thank you, Your Honor. Good morning. My name is Eugene Sokolov, and I represent the appellant, Kevin Wan, in this matter. It was Yancheng's burden in this case, at summary judgment, to come forward with proof of subject matter jurisdiction. It never did that, and the affidavit submitted on appeal cannot solve that problem. This court should vacate the judgment below and remain with instructions to dismiss. Yancheng is a partnership comprising four entities that it claims are Chinese citizens. The problem is that only individuals and corporations have their own citizenship for purposes of 1332. Other forms of unincorporated associations take the citizenships of their owners. And in this case, Yancheng's ultimate owners, the owners of its partners, include stateless entities that destroy complete diversity. Go ahead. I just wondered if, though, isn't that the fundamental question in the case? If we can read 1332A-4 in concert with 1332A-2, we'd have diversity jurisdiction, right? Your Honor, I don't think so. I think that there's the more fundamental problem that 1332A-4 creates diversity jurisdiction in the case where a foreign state is a plaintiff. And in this case, the plaintiff is Yancheng, which doesn't even claim to be a foreign state and couldn't meet the requirements to qualify as a foreign state under 1603. As the Supreme Court explained in Dole v. Patrickson, the way to satisfy 1603, the way to qualify as a foreign state, is through direct majority ownership by a foreign sovereign. And there's no dispute here that Yancheng can't qualify. Now, it's true that the citizenship status of the partners of an unincorporated association, like Yancheng, are imputed to that association. So Yancheng, for example, if it had partners that were located in Illinois and California, would have dual citizenship of Illinois and California. But it doesn't take their form or their status. So while this Court explained in Page, a partnership that has stateless partners is stateless and destroys complete diversity under 1332, the partnership does not become, for example, a corporation by virtue of the fact that a corporation is among its members, nor can it become a foreign state simply by virtue of the fact that there may be foreign states further up the chain. So that flows just from the text of 1603, which sets out what it means to be a foreign state. And the Court, I don't think, needs to get into the question, which is unsettled as far as we can tell, whether it would be appropriate to use together A2 and A4 in a case to sort of cobble together. Because of the indirect ownership. Because of the indirect ownership, exactly. What, is this just a hole in our statutory scheme? That's right, Your Honor. I think that's effectively what it is. When Congress revised 1332, when it enacted the Foreign Sovereign Immunities Act, it changed the language of the statute. It made clear that what remained in terms of federal diversity jurisdiction, obviously the parties here could seek relief in state courts, but what remained a federal diversity jurisdiction for a foreign state was when it acts as a plaintiff. Well, what do you make of Judge Friendly's opinion of the Ruggiero case out of the Second Circuit? I think what Judge Friendly was concerned there was what would be the animating purpose of the changes that Congress wrought. And where he came down, I think, is perfectly consistent with our position, which is Congress intended to make clear that foreign states could both be plaintiffs in diversity and defendants subject to different charges. That's where I have trouble. It seems to me that it is contrary to the animating purpose, as Judge Friendly saw it, for us to say Congress left a hole here. Congress was terribly careful in making this adjustment, and I just don't see how we can say Congress left a hole because of indirect ownership. Go ahead. I do have somewhat of a follow-up there, but go ahead. I think that Congress, in effect, left—I wouldn't call them holes. I would say that Congress crafted a new jurisdictional statute in the revised 1332 that differs in two ways that I think are relevant here. One is previous subsections 2 and 3 both featured foreign states, so you could have a foreign state on either side of an action. It could be in diversity under A2. You could also have a case between citizens of different states and have foreign states as additional parties to the action. In the revised post-FSIA version of the statute, you cannot have a foreign state as an additional party either. The only place it appears in 1332 now—the only place a foreign state appears in 1332 now is in A4 where it's acting as a plaintiff. It may seem anomalous, but I think it's consistent with the Court's reasoning in Page, which is to say that it matters who the parties are before the Court. And in this case, we have a party that clearly cannot satisfy the statutory predicate for qualifying as a foreign state, and there's no reason, I think, to expand the plaintext of the statute to let in a partnership, which is not a foreign state, which has foreign states only several—at least one and possibly more layers up the chain, take advantage of a statute that's not designed to fit that situation. Just let me make certain that I understand something. Are you contending that if there are multiple plaintiffs, and some are citizens or subjects of a foreign state, and some are foreign states, the plaintiffs can never establish diversity? Would they be forced into state court? I mean, how can that be, if it is what you are arguing? How can that be what Congress intended in Section 1332? So, Your Honor, I don't think that you need to reach that question here, because here you don't have multiple plaintiffs. You have one plaintiff, and that plaintiff clearly is not a foreign state. It merely includes owners further up the chain that may qualify as foreign states, and as the Court held in Page, we impute the citizenship status of the partners of a partnership to the partnership. But I would say it's not so strange, because in other situations where, for example, you have an expatriate and a citizen of a U.S. state suing citizens of another state, the presence of an expatriate on one side of the lawsuit, a stateless person, destroys diversity jurisdiction, even when they are individual parties. Is there any real doubt that all of the relevant plaintiff entities are citizens of China? Are you resting solely on the lack of evidence in the record? Or does the defendant have some evidence that a plaintiff entity in this case is a citizen of Illinois? What's happening? So, I think there are two ways that the Court can resolve this case. One way, which is the way that it resolves very similar situations in America's best inns and in the guarantee national case, is to say, look, this plaintiff had a complaint, an amended complaint, summary judgment papers, an opening brief, and a jurisdictional statement in which it could have come forward with evidence that established a basis for diversity jurisdiction. It still hasn't done that. And, in fact, the affidavit it submitted on appeal, not only is it not even clear if it's based on the personal knowledge of the declarant, a declarant who says that they are familiar with Yen Chang, the partnership, and worked for Yen Chang, but doesn't explain how they could have personal knowledge of the details of the partners. Why don't we say the same, though, about your position? The other side has given us an affidavit that purports to substantiate its position that these corporations are, in fact, should be treated as corporations as opposed to limited liability corporations under our law. And we haven't heard from you in reply to that. I mean, haven't you had an adequate opportunity at this stage to rebut that affidavit and haven't done it? Well, Your Honor, I guess there—I'm not sure I understand your question in the sense that we have certainly— Well, you know, I've got a newer declaration from the other side, right, about corporations, substantiating their view on these corporations. To the extent— I haven't heard any rebuttal from you by way of affidavit on that issue. So I would say, first of all, it's their burden, right, to prove subject matter jurisdiction. It's not our burden to rebut it. And to the extent that their affidavit includes a legal conclusion about the status, how these entities should be treated under U.S. law, we've certainly come forward with our arguments to explain why they should not. I mean, that's our entire— Is that a question we can decide here? Is there any reason why we would send this back to a district court, the status of these Chinese corporations? Couldn't we resolve that here as a matter of law? Your Honor, I think you could resolve the question here as a matter of law. I think that there are two issues at play. One of them is we don't have any information, any evidence to support the allegations and the complaint about who the ultimate owners of these entities are. So this is not a situation where the court could just say, well, let's assume that they are partnerships, but we can— And this goes to your question, Judge Rovner, when you said, is there any real dispute that these are all Chinese citizens? Well, there's certainly a dispute, right? The natural persons and the private entities here, we're not disputing they are Chinese citizens, although there's no evidence of that in the record, and it is their burden to come forward with evidence in summary judgment. With respect to the Chinese government entities, those are stateless, and so they do destroy diversity jurisdiction. That is a dispute between the parties. I think, Your Honor, Judge Ripple, just to answer your question about what's missing from the papers here for the court to make a decision as to whether these entities, these what they call limited liability companies, should instead be treated as corporations. It could take expert evidence to discern whether under Chinese law these are more like U.S. corporations. This is the question the court confronted in Fellows, right, in Fellows and then later in In Step, a similar case involving similar types of entities. In In Step, the court said, we're going to send this back to the district court. The parties disagree about what kind of entities they are, and we need more factual development. In Fellows, the court said, well— So you would be—you would not be adverse, I take it, to a remand? Well, Your Honor, I don't think that there is any point in a remand. I think, you know, in Guarantee National, I think the court put it very well that when a party has had an opportunity to make a submission on appeal and that submission does not establish a factual basis for diversity jurisdiction, that gives rise to the inference that further attempts are not going to be successful either, and it gives rise to the inference that jurisdiction is, in fact, lacking. Well, shouldn't the district court have an opportunity to sort out what are really complex and factual and legal issues about the citizenship of the plaintiff? Your Honor, I think that some of these issues may— None of this was brought to—you know, you never—the district court never had the arguments that you're making now. That's true, Your Honor, and that was also true both in America's Best Ends and in Guarantee National, a case where you were on the panel, Your Honor, where the question of whether there was sufficient information in the record to support subject matter jurisdiction didn't come up until oral argument. And after that, the court said, look, you need to file something that's going to reassure us that there's jurisdiction here. The parties did that, and the court was not satisfied either that in the America's Best Ends case that the declarations that were submitted were made on personal knowledge or that they supplied all of the necessary information, and the court said, that's it. You've had more than enough opportunities to meet your burden under the law, and there's no point in wasting everybody's time further. I mean, in our position is that that is the clearest analog to the situation, and the fact that it wasn't raised before the district court—well, it was raised in detail in our opening brief from pages 21 to 25. We raised all of these problems, including—sorry, Your Honor. Go ahead. Including the fact that there was this question of whether foreign state status would destroy complete diversity here. And in the opposing brief, what did we get? We got an affidavit that doesn't even tell the court anything about the ultimate owners of these partner entities, and I think that strongly suggests that Yen-Cheng understands it cannot show that those entities are not foreign states that would destroy diversity here. Mr. Sokoloff, I'd like to get your view of Judge Easterbrook's opinion in the Bumatic case. He seems to take a very pragmatic view of when something is a—a foreign entity is a corporation for purposes of our jurisdictional statutes. What do you say about that? Well, Your Honor, I think Judge Easterbrook, who, if I recall correctly, wrote both Bumatic and then Fellows, which is a case very much like this one, it all boils down to the same thing, which is that what matters in this kind of inquiry is the details. It's not enough—and I think this is clear from Bumatic—it's not enough that there be some features in common between the foreign entity that's bringing suit and a U.S. corporation, because after all, there are some features in common between limited liability companies and other forms of unincorporated associations that don't qualify as having their own citizenship and corporations. What matters is what is the foreign entity more like. And in this case, the foreign entity is more like a U.S. LLC, something no one disputes wouldn't have its own citizenship. And since the other entities— Why is it more like a United States LLC? Well, for one thing, it imposes strict restrictions on the transfer of share interests in the companies. That's under the Article 71 of the Chinese law that Yan Cheng cites. That's something that both in White, Pearl, and in Fellows, the court said a key attribute of U.S. corporations is alienable shares. And according to the cases and the scholarship we cited in our brief, the requirement that Chinese law imposes of third-party consent before someone can alienate their shares, that is a hallmark of an LLC, not of a corporation. I would also say that Yan Cheng has not pointed you to a single case anywhere that has treated an entity like this as a corporation for jurisdictional purposes. If you look at their brief, they cite three things. One of them is a complaint in the Merit Tat case, so that doesn't get us anywhere. The other two are decisions in which entities that are referred to as Chinese limited liability companies are referred to as corporations by the court, but where subject matter jurisdiction was not even in play. 1332 is not mentioned. There was no question of diversity or subject matter jurisdiction. So they've shown no case in which an entity like this counted as a corporation, and there are serious doubts on what they have introduced as to whether it could. I'm sorry, I see my time has elapsed, but thank you. Well, you've been answering our questions. So time flies when you're having fun, Mr. Sokoloff. All right. Let's have Mr. Giovanetto. Morning. Good morning. May it please the court. I'm Levi Giovanetto on behalf of Yangcheng Shanda. In this case, there is no actual dispute about the makeup of Yangcheng Shanda and its partnership. Forgive me, but I want to ask you right off the bat, what evidence, not allegations, but evidence, is there in the record about the citizenship of the four partners? I looked over the newly filed affidavit, as we all did, and it appears to be heavy on legal conclusions, but not very informative as to facts about citizenship of the partners. The new affidavit lays out who the four different owners are of Yangcheng Shanda, and each of those owners qualifies as a corporation under U.S. law, because in very similar fashion to biomatic, it meets personhood, limited liability, and the shares can be bought and sold subject to certain restrictions. What are those restrictions? That seems to be your colleague's point, that the restrictions are so restrictive that this looks like an LLC. Right. So, in fact, an in-step software case that my colleague has cited, where it was remanded to the district court, they took a look at a Chinese company, very similar, that had the exact same restrictions as are placed on shareholders here, and found, in fact, that that company was a corporation for purposes of diversity. The fact that there are limitations on the transferability of shares does not matter. It is that shares can be transferred subject to certain restrictions. Where in the record are we going to find the ins and outs of exactly what these restrictions are? They are in the Chinese law itself, Article 71. And we have a translation of that in the record? We do, yes. Okay. Well, you know, the plaintiff faults the defendant for citing no case regarding how that handled diversity jurisdiction when some owners are foreign citizens under 1332A2 and some are a foreign state under 1332A4. Has any court ever addressed this factual scenario? I didn't see any cases on points cited in any of the, in your brief, either. I mean, I might have missed it, who knows? I don't believe that there has been a court which has directly addressed the case of a partnership that includes a plaintiff that has partners that are both a foreign state as well as partners that are not a foreign state. Again, you don't need to reach that issue if you determine that the four entities are corporations. However, the changes to 1332, the act giving help to foreign governments, removing them from defendants in diversity jurisdiction cases, to read that act as precluding a partnership between a foreign government and a citizen of that government from diversity jurisdiction would be completely contrary to the purpose of the act. And there's simply no basis for saying that. Furthermore, in Page versus Democratic National Committee, the standard was set forth of what's required for diversity jurisdiction. And that is that all plaintiffs are diverse from all defendants and that each of them fits within one of the categories. Here, you look at the partnership. It has four different partners. All of those partners fit within one of the four categories. One of them, if it's not a corporation, then if you go further down the chain, you find out it is a government entity. And a government entity is not stateless. It is a state. So to say that it's stateless would be contrary to that. No. I'm sorry. Go ahead. No, please. If we make a determination that subject matter jurisdiction does exist, and we're reviewing the merits and Judge Bruce's determination with regard to the application of the Recognition Act, is there a problem with the way he made inferences on summary judgment for Mr. Kevin, for Mr. Kevin Wan? Specifically, I'm thinking of what we have here is a mailing to the last known address, although he's left a month earlier. There's a lot of discussion with regard to the brother, but it turns out, of course, that the other, the subsidiary was in a different province. How is that going to be enough under the standard, under the Illinois Recognition Act, for there to be notice? Certainly. So the parent company for which Kevin Wan was the CEO and his brother also worked was housed at a location in China. And notice, that's where notice was sent. His brother still had an office there and still worked there. He had left. He didn't tell anyone he left. And notice was received by his brother. And his brother actually appeared in court. It is certainly, there's no reason for them to assume that Kevin did not receive that notice. If Kevin had taken any affirmative steps to notify that his address had changed, based on the address he had provided them in the contract that was in dispute, or provided any forwarding address, when certainly his brother received the same notice, he could have provided a forwarding address and then he would have received it. But there was no way for the Chinese court, no reason for them to know the notice had not been received. Is there anything in the contract that requires Mr. Kevin Wan to give a forwarding address, or if there is a change of address, to notify the parties to the contract? The contract does not provide for that. But, again, under the standards, under all the cases that have examined what is reasonable efforts to provide notice, it does not require their, you know, there doesn't need to be an affirmative duty to provide a change of address. That is on the person whose notice is sent. If notice is sent to the last known address, that is sufficient. And which cases are you relying on for that proposition? The reply brief at pages 19 to 20 seems to distinguish Ma. The unpublished decision that exists did not interpret the Illinois Recognition Act. Are you referring to Nahas and Katib? Yeah, so there's two questions here. One is under, what is the standard under the Illinois Recognition Act? And then the second is, if the standard is, as we have stated, that the same is due process, that you have to provide reasonable efforts at notice, then you look at all the due process cases, which includes Ma, as to what is reasonable notice, reasonable attempts to provide notice. And so under those cases, in both Ma, CFTC versus Lakeshore, Al-Kaidi versus Luna, Krochik versus the United States, the standard is mailing to the last known address is sufficient, unless you have reason to know that the address has changed. Here, Mr. Wong did not tell anyone he had moved. He didn't leave a forwarding address. There was no way for them to know that he had moved. The only thing they point to is the fact that when notice was sent, it was signed for by someone who, you know, wasn't sure who that was. But again, when you send notice to a large building, it gets signed for and then it gets delivered. That's just how the standard practice is. There'd be no reason for them to think, oh, well, his brother, who was signed for by the same person, received the notice, but he didn't receive it. Thank you. Are you, having heard what you've heard so far this morning from your friend, Mr. Sokoloff, do you still assert that we must decide subject matter jurisdiction rather than remanding to the district court to address it in the first instance? I, myself, and I speak only for myself, I did not see a sufficient factual or evidentiary basis in the record to make that decision on appeal. And given that it is plaintiff's burden to establish subject matter jurisdiction, are you sure that you want this court to definitively decide it on appeal? If this court feels like it does not have sufficient information about the makeup of Yang Cheng Shanda in order to make a decision of subject matter jurisdiction, the appropriate course would be to ask for supplemental briefing or an additional affidavit. There's no actual dispute about who makes up Yang Cheng Shanda. They haven't pointed to any evidence. They don't have any real questions of how the entity is structured. If all that's missing is an additional affidavit because you don't believe that the entities are sufficient as corporations, we can certainly provide an affidavit testifying to what is already in the record in our complaint. Again, that's all the information there is. There's not going to be additional information. We know who all the parties are. We know that one of the four entities is a company that is eventually owned by entities owned by the Chinese government. We know that all the other entities are either owned by other Chinese corporations or individuals who are domiciled and citizens of China. Here's the problem for me at any rate. The plaintiff seemed to concede that the court relied on allegations in the complaint rather than evidence in deciding that diversity requirements were met. Now we have this affidavit that purportedly resolves the fact questions. But several of the statements in the affidavit are absolutely legal conclusions. They're not facts. Secondly, the affiant, who is an employee of the partnership entity, is unlikely to have personal knowledge of the citizenship and form of the four partners. I mean, nothing was submitted from the four partners themselves. Isn't all of this a matter that the district court should have an opportunity to sort out in the first instance? First, I believe, Your Honor, that in a closely held company, it is likely that an employee would know about the ownership of the partners here. Likely? Is that good enough here? Again, all we're missing or all it seems that you're requesting is an affidavit from the four partners. I'm not sure what the purpose is to send a report to get that affidavit. That's only one. I understand, Your Honor. And certainly, if you determine that you should remand it for purposes of the district court analyzing this issue, it would not be appropriate to vacate the ruling in that case. In the cases where this typically where this is remanded, the only times when it's been vacated, the judgment vacated, is where that judgment was based on a misunderstanding of subject matter jurisdiction, which is not the case here. It was not something that was challenged below, and the district court got it wrong. Here, the district court felt that it had sufficient information on subject matter jurisdiction, and so moved forward with the case. They didn't think that they were required to have more information summary judgment because it was not challenged. But if you would prefer to have the affidavit submitted in the district court, we certainly can do that as well. Again, though, if the Chinese companies are corporations, it doesn't matter who their owners are. That information becomes irrelevant because there are four corporations. Corporations are all undisputedly domiciled in China. I believe my opponent has suggested that a Chinese corporation cannot be under A2 if it is owned by the Chinese government. However, that only applies if the corporation is a defendant. Under the plain reading of the statute, a corporation is included in A2. Again, the only reason courts have said that a corporation cannot be considered a defendant when it's owned by a foreign government is because foreign governments have rights under 1330 that they cannot be sued in diversity jurisdiction. That does not apply to plaintiffs. You know, on page one of the response brief, the plaintiff identified Yancheng Shanda as a partnership. On page 24, the plaintiff argues that this was an, quote, undisputed fact. Undisputed fact, end quote, that Yancheng Shanda is a, quote, Chinese company, end quote, a plainly erroneous assumption on which the district court relied to establish citizenship of the plaintiff. Why should we be bound by such a clearly erroneous conclusion? I believe the conclusion that it's a Chinese company, I'm not sure that the district court was distinguishing between a company and a partnership. But again, in the record, we certainly stated that Yancheng Shanda was a partnership. I don't believe that issue was ever in dispute. Mr. Giovannetto, could you distinguish for me these Chinese corporations and what we call an LLC in this country? Right. How do we distinguish between the two? If you're an American LLC, then your position would fall. How are they different? Yeah, so there are, again, the factors that were set forth in Biomatic. First, personhood, that it's a separate legal entity, limited liability, and shares that are bought and sold subject to certain restrictions. In a typical U.S. limited liability company, there are not shares, and those shares cannot be bought and sold and sold to third parties, which is the case with the Chinese companies. I see. Okay. And so it's very similar to the entity in Biomatic, as well as other companies. In Flextronics, there was an identical Hong Kong entity. Again, it's under Hong Kong law rather than Chinese law, but the law was the same, identical form of company that was found to be a corporation. Similarly, in LearCorp, that's another case where there was a Bermuda limited liability company. Again, very similar in its structure, found to be a corporation. And so that issue is one that I think should be easy for this Court to determine. I think the only difficulty is that Biomatic is fairly laconic, and that's why I asked the question. I really wanted to get into that as best as we could here. Thank you very much. I see my time has expired. Thank you. Now, Mr. Sokoloff, you had asked for four minutes of rebuttal, and we asked you an awful lot of questions. So you may have your four minutes. Thank you, Your Honor. Mr. Sokoloff, could I ask you to begin on the same vein that I asked Mr. Giovannotto? If subject matter jurisdiction ends up being established, your thoughts with regard to the district court's handling, and if it ended up in a remand, what would that look like? Thank you, Your Honor. Yes, I wanted to go there because I think one of the keys here is that Gensheng does not and cannot cite a single Illinois case that says that reasonable efforts are sufficient under the statute. And to the contrary, the Illinois Supreme Court has held for 100 years that when it comes to uniform acts, the way to interpret these statutes is to apply them according to their plain and ordinary meaning. The plain and ordinary meaning of to receive notice, especially if you think of it in the context of to receive notice with adequate time to defend, refers to actual notice. And this court recognized that in the Korchin case, where it interpreted one of the federal appellate rules, which also spoke of receipt of notice. And here, the district court recognized that there was a genuine dispute as to whether Mr. Wan ever actually received notice. So the court knew and expressly said it could not grant summary judgment if the standard were actual notice. Well, the standard is actual notice, and the court got past that disputed issue only by misreading the statute. If you look at the cases, and I would urge you to read the cases carefully that my friend cites for the proposition that due process is the rule when it comes to the Uniform Act, because actually only two of the cases they cite even address this issue. The vast majority of cases in this space are decided basically on two grounds. One is that notice is so obviously deficient that it fails due process, and the question of actual notice never comes into play. And that was the case, for example, in the Nahas case, where it was such deficient notice there was no need to explore the specifics. In Katib, I would note that the court only discussed the Recognition Act arguendo, because there was no money judgment there. It was a divorce decree. And so the court started with the Enforcement Act, whether the divorce decree should be enforced in the state, and that is a due process question, not an actual notice question. Notice doesn't play a role there. So there we had the court starting with due process, not deciding that the Money Judgment Act should be interpreted that way. The other cases fall into what I would call the quibbles category, cases like Galeano, where notice is actually received. In fact, in Galeano, it was received three times, and the dispute is, well, the notice was infringed, or it wasn't stamped with the right stamps, or it wasn't handed to me personally, it was handed to my secretary. That's the Armsco case. The only cases that actually say it's not actual notice, it is due process, are two cases out of California interpreting that state's version of the statute, one of them an intermediate California appellate court, the other one a federal district court citing that decision. So there is no binding, and I would say no persuasive authority here that would motivate the court to overlook the plain text of the statute. If I could, Your Honor, I'd like to return to jurisdiction because I think my friend on the other side left you with a couple of points I'd just like to push on further. Judge Ripple, you asked if you could distinguish these entities from U.S. LLCs, and I don't think that he did in his answer to your question because it's clear that personhood and limited liability are attributes of U.S. LLCs. That was, after all, in fellows, why this court said, well, if the best you have is corporate personhood, talking about the exact same kind of entities at issue here, then that's plainly not enough to treat you as a corporation. So we come down to the question of alienability of shares, and my friend said, well, the only thing the court means there is if you literally cannot alienate your shares under any circumstances, then maybe you're not a corporation, but if you can under certain circumstances, then you can be treated as a corporation. Well, again, you can alienate shares and membership interests in an LLC subject to certain restrictions, so that's not a distinction from an LLC. If you look at the Delaware law or the Illinois law in LLCs, it's clear both of them have that same feature. The feature that they have is – and I'm sorry, my time has expired, but if I could just briefly finish – the feature that they do have in common with the companies at issue here is that the default rule by statute is extremely restrictive. And here, the default rule, it can be circumvented by the limited liability companies charter, but there's no evidence in the record that the charters here do get around that rule. And so the best we know from this record here with Judge Rovner, I think you hit the nail on the head. It is deficient in this respect. The best we can get to here is that these are entities that have their own legal personhood, limited liability, and sharp restrictions and alienation that makes them decidedly more like LLCs than corporations. Are there no further questions? Judge Ripple or Judge Brennan, do either of you have any more questions? No, thank you. No, thank you. Thank you. All right, well then, thank you. And thanks to both parties. The case will be taken under advice.